UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARI PFAU,

    Plaintiff,                                  Hon. Robert J. Jonker

v.                                                    Case No. 1:21-cv-234

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that the Commissioner's decision be vacated and this matter remanded for further administrative action pursuant to sentence four of 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining

whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff applied for benefits on October 12, 2018, alleging that she was disabled due to chronic obstructive pulmonary disease (COPD), asthma, right shoulder problems, degenerative disc disease, osteopenia, difficulty walking, numbness in both legs, carpel tunnel syndrome in her right hand, seizures, memory

problems, and post-traumatic stress disorder (PTSD).  (ECF No. 11-5, 11-6, PageID.252, 281).[1]  Plaintiff was 52 years of age when she applied for benefits. (ECF No. 11-5, PageID.252).  She successfully completed high school and worked previously as a coffee maker and fast-food worker.  (ECF No. 11-2, PageID.69).

Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ).  Following an administrative hearing, the ALJ, in an opinion dated February 5, 2020, determined that Plaintiff did not qualify for disability benefits.  (ECF No. 11-2, PageID.53-129).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision.  (*Id.*, PageID.41-46).  Plaintiff later initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[1] Plaintiff also filed an application for Disability Insurance Benefits, but later withdrew such after acknowledging that there did not exist evidence that she was disabled prior to the expiration of her insured status.  (ECF No. 11-2, PageID.81).

-3-

Plaintiff bears the burden to demonstrate she is entitled to disability benefits and she satisfies her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315-16 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from: (1) obesity; (2) COPD/asthma; (3) right shoulder labral tear; (4) degenerative disc disease of the lumbar spine, with spondylosis; (5) degenerative disc disease of the thoracic spine; (6) degenerative disc disease of the cervical spine; (7) bilateral carpal tunnel syndrome; (8) alcohol withdrawal seizures; (9) PTSD; (10) depression; and (11) substance abuse, alcohol, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (ECF No. 11-2, PageID.55-58).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform light work subject to the following limitations: (1) she can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; (2) she can occasionally stoop, kneel, crouch, and crawl; (3) she can occasionally reach overhead with her right dominant extremity; (4) she can perform frequent, as opposed to repetitive, handling and fingering, bilaterally; (5) she must avoid concentrated exposure to vibration and pulmonary irritants such as fumes, dusts, odors, and gases; (6) she can have no exposure to workplace hazards such as dangerous moving machinery or unprotected heights; (7) she is limited to simple, routine tasks that do not require complex decision-making or judgment; and (8) she can have no more than occasional contact with co-workers, supervisors, and the general public.   (ECF No. 11-2, PageID.59).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, her limitations notwithstanding. *O'Neal*, 799 Fed. Appx. at 316.  In satisfying this burden, the ALJ may rely on a vocational expert's testimony.  *Ibid.*

In this case, a vocational expert testified that there existed approximately 865,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.   (ECF No. 11-2, PageID.110-13).   This

represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

## I. Medical Source Opinion

On December 23, 2019, Kimberly Thayer, Family Nurse Practitioner completed a form regarding Plaintiff's ability to perform work-related activities. (ECF No. 11-13, PageID.1277-78). Thayer reported that during an 8-hour workday, Plaintiff can: (1) occasionally lift/carry 10 pounds; (2) stand/walk for 3 hours; and (3) required a sit/stand option. (*Id.*, PageID.1277). The ALJ discounted Thayer's opinions, however, on the ground that such were "unpersuasive." (ECF No. 11-2, PageID.67-68). Plaintiff argues that she is entitled to relief because the ALJ's rationale for rejecting Ms. Thayer's opinions is not supported by substantial evidence.

Because Plaintiff filed her application after March 27, 2017, the ALJ evaluated the medical opinions pursuant to 20 C.F.R. § 416.920c. This regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. § 416.920c(a). Instead, the ALJ is required to articulate his determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.* § 416.920c(b)(1).

These factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion.  *Id.* § 416.920c(1)-(5).  The ALJ must explain her consideration of the supportability and consistency factors, but absent circumstances not present here, is not required to explain how the remaining factors were considered. *Id.* § 416.920c(b)(2), (3).  The regulations define "supportability" and "consistency" as follows:

> (1) Supportability.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* § 416.920c(c)(1)-(2).

In support of her decision to discount Thayer's opinions, the ALJ cited several reasons.  (ECF No. 11-2, PageID.67-68).  First, the ALJ observed that Ms. Thayer's report contained a "misstatement."  The report Thayer completed requested that she identify "the earliest date these limitations apply."  (ECF No. 11-13, PageID.1278).  In response, Thayer responded, "prior to Oct. 2018."  (*Id.*).  The ALJ concluded that this "is likely a misstatement, given that the period in question is since October of 2018."  (ECF No. 11-2, PageID.68).  As the ALJ observed, because Plaintiff is seeking SSI benefits, the period relevant to her claim begins

when she files her claim, which in this case is October 2018. *See, e.g., Taylor v. Commissioner of Social Security*, 2019 WL 5106371 at *6 (E.D. Mich., Sept. 23, 2019) (for SSI claims, "the period under consideration [does] not begin until the day of his. . . application for benefits") (citing 20 C.F.R. § 416.202). Given this circumstance, the Court does not interpret Thayer's comment as a misstatement, but rather as expressing the opinion that Plaintiff began experiencing the limitations in question prior to the period relevant to her claim. This rationale does not support the ALJ's assessment of Ms. Thayer's opinions.

The ALJ next concluded that Ms. Thayer's opinions are inconsistent with her treatment notes. Specifically, the ALJ stated that Plaintiff was noted "to have [a] normal gait, and little more than tenderness, pain, and spasms on examination of the lumbar spine." (ECF No. 11-2, PageID.68). These reasons do not survive scrutiny.

First, while treatment notes generally indicate that Plaintiff walked with a normal gait, Ms. Thayer did not report that Plaintiff experiences difficulty with her gait. Thus, the relevance of this observation is difficult to discern. Moreover, the ALJ has not identified authority that stands for the proposition that a "normal gait" is inconsistent with sedentary work.

Next, the ALJ's comment that examinations of Plaintiff's spine revealed "little more than tenderness, pain, and spasms" is misleading and unpersuasive. X-rays of Plaintiff's lumbar spine, taken August 28, 2014, revealed: (1) degenerative disc

disease at L5-S1; (2) grade 2 spondylolisthesis[2] at L5-S1; and (3) lower lumbar facet arthritis.[3] (PageID.408). Treatment notes dated October 22, 2018, indicate that Plaintiff was experiencing 8/10 pain in her lumbar spine which radiated into her lower extremities. (ECF No. 11-8, PageID.426). Treatment notes dated February 21, 2019, indicate that Plaintiff was experiencing 9/10 pain in her lumbar spine. (ECF No. 11-10, PageID.955). A consultive examination, conducted on April 18, 2019, revealed straight-leg raising was positive bilaterally. (*Id.*, PageID.1023). Treatment notes dated April 29, 2019, indicate that Plaintiff was experiencing 7/10 in her lumbar spine pain which radiated into her lower extremities. (ECF No. 11-11, PageID.1062).

---

[2] Spondylolisthesis refers to a circumstance in which a spinal vertebra "slips out of place, resting on the bone below it." Spondylolisthesis, available at https://my.clevelandclinic.org/health/diseases/10302-spondylolisthesis (last visited on July 5, 2022). This condition causes "narrowing [of] the needed space for the nerves" which may result in "pressure on a nerve, which could cause lower back pain or leg pain." *Id.*

[3] The facet joints provide "flexibility" and "stability" to the spine. Facet Arthritis, available at https://sportsmedicine.mayoclinic.org/condition/facet-arthritis/ (last visited on July 5, 2022). Facet arthritis, which occurs when the cartilage covering the ends of the joints "wears out and becomes thin," causes back pain which may radiate into the lower extremities. *Id.*

A May 15, 2019, MRI examination of Plaintiff's lumbar spine revealed: (1) anterolisthesis[4] of L5 on S1 with a PARS defect[5]; (2) retrolisthesis[6] of L4 on L5; (3) "mild" central canal stenosis; and (4) "severe" foraminal narrowing at L5. (PageID.1269). Treatment notes dated June 17, 2019, indicate that Plaintiff was experiencing 7/10 pain in her lumbar spine that radiated into her lower extremities. (ECF No. 11-13, PageID.1261).

Treatment notes dated August 21, 2019, indicate that Plaintiff was experiencing "weakness of the bilateral lower extremities," which is exacerbated by "prolonged standing or walking." (ECF No. 11-13, PageID.1239-40). Treatment notes also consistently revealed that Plaintiff experienced limited range of motion in her lumbar spine. (ECF No. 11-8, 11-10, 11-11, 11-13, PageID.486, 511, 950, 1051, 1205, 1233). Suffice to say that examination of Plaintiff's lumbar spine revealed quite a bit more than simply "tenderness, pain, and spasms."

---

[4] Anterolisthesis refers to a circumstance in which a vertebral body is "positioned abnormally compared to the vertebral body below it." Anterolisthesis, available at https://www.cedars-sinai.org/health-library/diseases-and-conditions/a/anterolisthesis.html (last visited on July 5, 2022). This "slippage often occurs as a result of bone fractures." *Id.*

[5] A pars defect is caused by a "stress fracture involving the pars interarticularis of the posterior vertebral arch." Pars Interarticularis Defect, available at https://www.ncbi.nlm.nih.gov/books/NBK538292/ (last visited on July 5, 2022).

[6] Retrolisthesis occurs when the vertebra "slip backward on one another" which "puts a lot of pressure on the vertebra and various parts of the spine, causing leg and back pain." What is Lumbar Retrolisthesis?, available at https://www.webmd.com/back-pain/what-is-lumbar-retrolisthesis (last visited on July 5, 2022).

The ALJ next asserts that Ms. Thayer's opinions are inconsistent with the fact that Plaintiff's impairments did not require surgical intervention. The ALJ fails, however, to identify any item in the record indicating that surgery was a viable or recommended treatment option for Plaintiff. *See, e.g., Millsap v. Commission of Social Security*, 2017 WL 489745 at *4 (S.D. Ohio, Feb. 7, 2017) (where an ALJ argued that a claimant's pain could not have been severe because she did not undergo surgery, the court rejected such noting that there was no evidence recommending the claimant undergo surgery).

While the Court recognizes that the nature and extent of treatment a claimant receives is a relevant consideration, for the ALJ to disregard a treating source's opinion based on the *unsupported conclusion* that the opinion must be deficient because Plaintiff did not undergo a particular type of treatment comes perilously close to the ALJ improperly "playing doctor." *See, e.g., Brown v. Commissioner of Social Security*, 602 Fed. Appx. 328, 331 (6th Cir., May 8, 2015) ("an ALJ should resist the temptation to substitute [her] interpretation of medical records for that of a physician who has examined the records"); *Simpson v. Commissioner of Social Security*, 344 Fed. Appx. 181, 194 (6th Cir., Aug. 27, 2009) ("ALJ's must not succumb to the temptation to play doctor and make their own independent medical findings). This is especially apt in the context of back surgery which is often less than successful in resolving the patient's difficulty. *See, e.g., Wening v. Astrue*, 2008 WL 859031 at *9 (S.D. Ohio, Mar. 31, 2008) (noting that the claimant underwent at least two – and possibly four – unsuccessful back surgeries); Failed Back Surgery

Syndrome: When the Pain Comes Back After Surgery, available at https://www.pennmedicine.org/updates/blogs/neuroscience-blog/2018/september/failed-back-surgery-syndrome (last visited on July 6, 2022) (noting that "up to 40%" of back surgeries fail to relieve the patient's pain).

Moreover, even if surgery were a viable option for Plaintiff, a decision to decline such would not necessarily support the ALJ's position. *Millsap*, 2017 WL 489745 at *4 (cautioning against misinterpreting a decision by a claimant to decline surgery in light of "the inherent risks associated with any surgery"). Accordingly, the Court finds this rationale likewise fails to support the ALJ's analysis.

The ALJ next asserts that Ms. Thayer's opinions are "inconsistent with the findings of the consultive examiner." (ECF No. 11-2, PageID.68). As the ALJ acknowledges, however, the consultive examiner "declined to give any opinions concerning [Plaintiff's] functional limitations." (*Id.*). The Court does not understand, and the ALJ fails to explain, how Ms. Thayer's opinions can possibly be inconsistent with a non-existent opinion from a consultant.

The ALJ attempts to avoid this observation by noting that the consultant reported that Plaintiff "was able to complete all tasks asked of her with some mild difficulty due to pain, decreased motor strength and limited range of motion." (ECF No. 11-10, PageID.1023). First, that Plaintiff was able to perform limited maneuvers and activities during a brief consultive examination is hardly conclusive regarding the extent to which Plaintiff can perform work activities for an 8-hour work shift on a sustained and consistent basis. Moreover, the Court fails to discern,

-12-

and the ALJ fails to explain, how the consultant's observations are inconsistent with Ms. Thayer's opinions.

Finally, the ALJ argues that Ms. Thayer's opinions are inconsistent with a request by Plaintiff to participate in a "wellness/fitness class." The ALJ fails to identify what activities were to be performed in this wellness/fitness class. Thus, as Plaintiff argues, the ALJ's argument is little more than speculation. In sum, for the reasons articulated above, the ALJ's rationale for rejecting Ms. Thayer's opinions is not supported by substantial evidence.

## II.  Residual Functional Capacity

A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule").

Plaintiff argues that she is entitled to relief because the ALJ's RFC assessment is not supported by substantial evidence. Specifically, Plaintiff argues that her ability to lift and carry items, reach overhead with her right upper extremity, and stand/walk is more limited than the ALJ recognized. In addition to the evidence discussed above regarding Plaintiff's back pain, Plaintiff also suffers

from a serious injury to her right dominant shoulder as well as bilateral carpal tunnel syndrome.

Treatment notes dated March 21, 2018, indicate that Plaintiff was experiencing pain, tenderness, and decreased range of motion in her right shoulder. (ECF No. 11-8, PageID.442-45). Treatment notes dated October 22, 2018, indicate that Plaintiff was experiencing chronic right shoulder pain which rated 8/10 as well as limited range of motion. (*Id.*, PageID.426). Treatment notes from early 2019, indicate that Plaintiff suffered a labral tear and a partial rotator cuff tear with impingement causing her to experience decreased strength and range of motion. (ECF No. 11-10, PageID.951-52, 961). Treatment notes from later that year indicated that Plaintiff was experiencing pain, tenderness, and decreased range of motion in her right shoulder. (ECF No. 11-13, PageID.1205, 1233). The record also reveals that Plaintiff suffers bilateral carpal tunnel syndrome, which has caused her to experience diminished strength and sensation. (ECF No. 11-8, 11-11, 11-13, PageID.458-59, 483, 486, 495, 1039, 1263).

In light of the evidence discussed herein, as well as the ALJ's failure to articulate a good reason for discounting Ms. Thayer's opinions, the undersigned finds that the ALJ's RFC assessment is not supported by substantial evidence. Because the vocational expert's testimony was premised upon a faulty RFC determination, the ALJ's reliance thereon does not constitute substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon

responses to hypothetical questions posed to a vocational expert, such questions must accurately portray the claimant's impairments).

### III. Remand is Appropriate

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [her] entitlement to benefits." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994); *see also*, *Brooks v. Commissioner of Social Security*, 531 Fed. Appx. 636, 644 (6th Cir., Aug. 6, 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also*, *Brooks*, 531 Fed. Appx. at 644. Evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither competent nor authorized to undertake in the first instance. Moreover, there does not exist compelling evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further administrative action.

### CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be vacated and this matter remanded for further administrative action pursuant to sentence four of 42 U.S.C. § 405(g).

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                Respectfully submitted,

Date: July 7, 2022                        /s/ Phillip J. Green
                                                PHILLIP J. GREEN
                                                United States Magistrate Judge